DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF UTAH.

*(Continued from Volume 30.)*

BARTHOLOMEW v. FAYETTE IRR. CO.

No. 1710.   Decided August 3, 1906    (86 Pac. 481).

1. TRIAL—FINDINGS—FORM—SUFFICIENCY.—In an action to restrain defendant corporation from regulating and controlling the distribution of certain water for irrigation, plaintiff claimed that he had by prescription acquired the right to use the water for certain periods of time at certain intervals. The court found that plaintiff had not, as he alleged, had the use of water every ten or twelve days. *Held*, that this finding was not sufficiently definite, and the court should have found precisely what use plaintiff had made of the water.

2. WATERS AND WATERCOURSES—WATER RIGHTS—CONTROLLING USE OF STREAM.—A number of persons owned in common the right to use certain quantities of water from a stream for irrigation. The manner in which the water was to be used was determined by a meeting of the various owners of water rights. Owners representing the rights to the major portion of the water formed a corporation in which the rights previously held by the various stockholders were vested. *Held*, that this corporation had no right, without the consent of other owners of water rights, to control and regulate the manner of distributing the water. [1]

APPEAL from District Court, Sanpete County; F. Erickson, Judge.

---

[1] Fisher v. Bountiful City, 21 Utah 29, 59 Pac. 520.

(1)

31 Utah—1

Action by George M. Bartholomew against the Fayette Irrigation Company. From a judgment for defendant, plaintiff appeals.

REVERSED AND REMANDED, WITH DIRECTIONS TO RENDER JUDGMENT FOR PLAINTIFF.

*W. D. Livingston* for appellant.

*Jacob Johnson* for respondent.

### APPELLANT'S POINTS.

When a suitor comes into a court of proper jurisdiction to settle "differences of opinion," "claims of rights" or conflicts of interest in relation to his property the court must not avoid the duty imposed upon it, and thereby defeat the objects of jurisprudence. It must proceed to adjudicate the rights of the parties and extend the arm of law sufficiently to protect such rights. It must decide all the issues and if insufficient evidence for such purpose with certainty is produced it must exercise its prerogatives and bring forth sufficient information to enable it to settle the issues. (11 Enc. Pl. & Pr., 905 and cases cited; Spelling, New Trials and Appellate Procedure, sec. 253 and cases cited; *Nephi Irr. Co. v. Jenkins,* 31 Pac. 986.)

The principle of majority cannot be applied where the relationship is merely appropriators upon the same stream, or where the parties are tenants in common. In such relationships the parties may agree among themselves that each shall have the use of the water at certain times. (Long on Irrigation, sec. 61 and cases cited.)

But in the absence of such agreement the plaintiff may, to the extent of his appropriation use sufficient quantity of water to irrigate all his lands for which the appropriation was made. The benefits of his use cannot be impaired either in curtailing the amount, or in the period of use. (Long on Irrigation, sec. 54 and cases cited.)

In neither relation could the major interest subject the minor interest to its control and management. (17 Am. and Eng. Ency. Law [2 Ed.], 669.)

Each party might use the water as he saw fit so long as it did not interfere with the rights and use of the other appropriators. (Id., 670, 671; *Peabody v. Minot,* 41 Mass. 329.)

The parties have legal and equitable remedies to which they resort according to the right interfered with or the remedy sought, and they may have all their rights settled and remedies applied in a single suit. (Id., 705.)

STRAUP, J.

This action was brought by plaintiff against the defendant, a private corporation, to restrain it from regulating and controlling the distribution of the waters of Warm creek, situate in Sanpete county. Judgment was for the defendant. Plaintiff appeals.

The creek is a natural stream of water having its source from natural springs east of the town of Fayette. Many years ago the plaintiff and others appropriated all the waters of the stream for irrigation and culinary purposes. The stream is sufficient to irrigate only about two hundred and fifty or three hundred acres. The plaintiff was one of the earliest appropriators, and made his appropriation in 1883. In 1888 the owners and appropriators, by arbitration, determined the quantity of water in the creek and divided it into 565 shares or acres, of which plaintiff's quantity was fixed at thirty-nine and a fraction acres or shares. He owned fifty-five acres of land lying to the east of Fayette, upon which the water was used. Of the 565 acres or shares the stockholders of the defendant corporation own 404 shares or acres, and the remainder is owned by persons not stockholders of the defendant corporation. There is no question raised as to the quantity of water to which plaintiff is entitled. When the waters of the stream were first appropriated, there were what are called the "North Bench and the South Bench Ditches," also called the "Field Ditches," in which waters of the stream coursed to irrigate lands outside of the town of Fayette. There was also a ditch

called the "City Ditch," in which the waters of the stream coursed to irrigate the town lots of Fayette and to supply the people of Fayette with water for culinary purposes. Later the two field ditches were consolidated into one ditch, the South Bench ditch, which was extended a distance of more than its original length.

The points of contention are as to the manner in which the plaintiff is entitled to use the water out of the field ditch, and as to the authority of the defendant corporation to regulate and control its distribution. On the part of the plaintiff it is contended that for many years, fifteen or twenty, and until interfered with by the defendant, he used the water of the creek by what is known as "half turns"—that is, every irrigating season he used the stream for nineteen and twenty hours each ten or twelve days; that he acquired a right to so use it; that such a use is necessary, especially to grow garden and fruit products, which were, for many years, raised by him, and that such a use is also better adapted to, and more economical in, the raising of ordinary farm products. From the time of the appropriation of the water, and until the incorporation of the defendant in 1903, in the spring of each year, the water owners and users of the field ditches met in mass or public meetings, and elected a committee, generally of three persons, whose duty it was to measure and distribute the water, and to make out bulletins to the water users. It was testified to by some witnesses that the water users indicated at such meetings, and, by other witnesses, that the water users indicated to the committee when making out the bulletins, whether they desired to use the water by the whole or half turn; that is, for instance, as to plaintiff's case, whether he would take the water every ten or twelve days for nineteen and twenty hours, the half turn, or every twenty or twenty-one days for thirty-nine hours, the whole turn; and that the water was distributed by the committee accordingly, and as indicated by the user. Some took the water by the half turn, others by the whole turn. The evidence shows that the plaintiff, until interfered with by the defendant, had the use of the water from the field ditch every ten or twelve days. In 1903 a ma-

jority of the water users and owners formed a private corpo-
ration. The plaintiff and four or five other owners and water
users did not join the corporation, nor did they convey or
grant any right or title to it.

After the incorporation, and especially in 1904, the de-
fendant, as such corporation, assumed to and did regulate,
control, manage, and distribute the waters of the stream, as
well as manage, control and regulate the ditches. In the de-
fendant's answer it is alleged, and in its brief it is asserted,
that in the year 1903 a majority of the water owners form-
ed a corporation, the respondent herein, "for the purpose of
managing, regulating, controlling, and distributing the waters
of Warm creek to and among its stockholders and other own-
ers of the water of said creek, and to maintain and keep in
repair the various ditches incident to the use, control, regulat-
ing, and distributing of said water." In its brief it is further
stated: "The only real question involved in this litigation is:
By what authority was this water to be regulated, controlled,
and distributed to the respective owners thereof? Hereto-
fore it has been a majority of such owners, and that was the
case in 1904; when the corporation managed the matter it
held and owned 404 out of the 565 of the acres, so-called, of
water in the creek. The great majority of the people of that
community associated themselves together and formed the re-
spondent corporation for express purpose of accomplishing
this purpose, and may we not inquire, what better agency
could be employed for the purpose?" The position of the de-
fendant is also well defined by the testimony of the president
of the corporation wherein he said: "We own a majority of
stock in the ditch and we claim the right, if we handle his
[plaintiff's] water and him [plaintiff] being in the minority,
that he should be governed by the corporation, it being a ma-
jority, and should be subject to the rules and regulations of
the corporation. . . . We claim the right to control him
and assess taxes against him." To the same effect is also the
testimony of other officers and stockholders of the defendant,
wherein it was testified to by them: "The present corporation
regulates everybody's water just the same, whether they are

in the corporation or not, it makes no difference." "As a board we controlled the water, and distributed it to the plaintiff as we did to others." After the incorporation of the defendant, public meetings were no longer held by the water owners or users, nor was any committee or water master appointed or elected to regulate or distribute the water, except such as were appointed or elected by the corporation, either at its stockholders' meetings or by its board of directors. The corporation claimed the right to so appoint a water master and to regulate and to distribute the water, because it represented a majority of the water owners. The corporation also claimed the right to determine, and did determine, that a whole turn was the most economical use of the water, and that the water should be, and it was, so distributed by it to the users, including the plaintiff, in 1903 and 1904. This method gave the water to plaintiff thirty-nine hours every nineteen or twenty-one days, in the irrigating season, instead of nineteen and twenty hours every ten or twelve days, and with such a long interval of time between irrigations, garden and fruit products could not be successfully grown by him. Through his appropriation and usage of the water, he claimed to have acquired the right to the use of the water by the half turn. He protested and objected to the corporation distributing the water, and its distributing it to him by the whole turn. All the evidence in the case shows that garden and fruit products could not be raised with an interval of nineteen or twenty-one days between irrigations; that such products require irrigation at least every ten or twelve days.

The court found (tenth finding): "That the plaintiff has not heretofore had his turn of water out of the said field ditch every ten or twelve days during any year." The court also found (eighth finding): "That the said city stream has been so regulated as to furnish each person using the same, one turn in periods of time ranging from six to ten days apart, and has been used by the owners thereof in the irrigation of their gardens, or orchards, and for domestic and culinary purposes, and that transfers of water from the field ditches to said city ditch have been allowed each year and that plain-

tiff's said orchards, gardens, and a portion of his said land have been and can be, without inconvenience to any person, irrigated from said city ditch." It is further found by the court (twelfth finding): "That in the year 1904 the defendant corporation, by its officials, assumed the management and control of said ditches and water, and did distribute said water to the respective parties entitled thereto, including the plaintiff, and in proportion to their respective interest therein, and that in such distribution by the defendant the plaintiff suffered no injury from the acts of the defendant." In its conclusions of law (fifth conclusion) the trial court held: "That the acts of the defendant in the maintaining and repairing the South Bench ditch and the regulating, controlling, and distributing of the waters of Warm Creek in the year 1904 was no violation of the rights of the plaintiff or any other person, but were the lawful and necessary acts and conduct of the defendant in the reasonable and necessary control, management, and distribution of the waters of Warm Creek to the respective parties entitled to its use, and to the extent of their just proportion thereof." It was further found by the trial court that the plaintiff sustained no injury, that he was not entitled to injunctive relief, and his complaint was dismissed.

We think the court erred in its tenth finding, as being against the evidence. It was admitted by the defendant, that, because of its adoption of the whole turn rule as to the use of the water in the field ditches, the plaintiff, in the years 1903 and 1904, was deprived of the use of water, in the irrigating seasons, for a period of nineteen to twenty-one days. In justification thereof, among other things, it was claimed by it, that the plaintiff could have transferred water from the field ditches into the city ditch from which he could have irrigated his garden and orchard as often as the raising of such products required. While the court, in the eighth finding, found that the city stream had been regulated so as to furnish each person using the same one turn in periods of time ranging from six to ten days apart, and that it had been used by the owners thereof in the irrigation of gardens, orchards, and

for culinary purposes, and that transfers of water from the field ditches to said city ditch had been allowed each year, and that plaintiff's orchard and garden had been and could be irrigated from the city ditch, no finding is made by the court that the plaintiff had any right or interest in and to the city ditch, or in and to its use, or that he had any right to transfer to it water from the field ditches, or that he had any right whatever to irrigate his garden or orchard or any portion of his land from the city ditch. Under the issues and upon the evidence the court was called upon (1) to determine what authority the defendant corporation had to regulate, control, and distribute the waters of the creek the use of which belonged to plaintiff, and (2) to ascertain the manner in which the plaintiff had and was entitled to use the water of the creek through the field ditches. The question as to what right he had in and to the city ditch, or what use he was authorized to make of it, was not in issue, nor involved. The plaintiff alleged and claimed the right to the use of the water of the creek through the field ditches, not the city ditch, and that his right thereto was interfered with by the defendant. To merely find, as the court did, that the plaintiff "had not the water every ten or twelve days from the field ditch," is not finding that he did not have it a less or a greater number of days, nor as to what use he had made or was entitled to make of it, nor as to what right or interest he had acquired in and to the use of the water through it. Plaintiff might have used the water through the field ditch every nine or thirteen days, which fact would not be repugnant to the finding, but would be consistent with plaintiff's claim and antagonistic to that of defendant. The court therefore erred in not making a finding as to the manner in which the plaintiff had and was entitled to the use of the water of the creek through the field ditches, and what rights with respect thereto had been acquired by him.

It is also clear that the defendant did not acquire the right to regulate and distribute the waters of the creek in manner as found and decreed by the court, and as shown by the evidence. Before the incorporation, the stockholders of

the defendant, the plaintiff, and all others having a right to the use of the water in the stream, were tenants in common. Assuming now, that a majority of the tenants in common, in a meeting where all are entitled to representation and to participate in the proceedings, have power to control the minority with respect to the regulation and distribution of the water when no vested right of the minority is impaired by the exercise of such power, still a majority of such cotenants may not thus control the minority at a meeting or proceeding in which they have no right of representation nor voice in the action taken. A majority of the tenants in common organizing themselves into a corporation can do no more in such case, in their corporate capacity than they could have done individually. When the defendant, therefore, through mere actions of its stockholders or its board of directors, or otherwise, merely through its corporate capacity, assumed to do as it did, the regulation, control, and distribution of water the use of which belonged to plaintiff, such action was an invasion and impairment of plaintiff's rights. To the extent of his interest, he had an equal right with that of defendant to a voice in the proceedings determining matters of regulation and distribution of waters in which he was interested. The defendant, neither in law nor in fact, having acquired dominion over, or right to control or distribute, such water, the court erred in adjudging that the acts of the defendant in "controlling and distributing the waters of Warm Creek in the year 1904 was no violation of the rights of plaintiff." (*Fisher v. Bountiful City,* 21 Utah 29, 59 Pac. 520.)

The judgment of the court below is reversed, the case remanded, the court directed to make a finding and enter judgment awarding to plaintiff the use of the water of the creek through the field ditch as in his complaint prayed for, and to grant the injunction asked. Costs to be taxed against respondent.

BARTCH, C. J., and McCARTY, J., concur.